UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re:<br>Gregory James Reed (xxx-xx-1153)<br>2460 Burns Ave<br>Detroit, MI 48214<br>                               Debtors | Case No: 14-53838-mbm<br><br>Chapter 7<br><br>Hon. Marci B. McIvor |
| Verladia Blount, f/k/a Verladia Reed<br><br>      Plaintiff<br><br>-vs-<br><br>Gregory James Reed<br><br>      Defendant | <br><br><br>Adversary Proceeding No. 14-   -mbm<br><br>Hon. Marci B. McIvor |

**CREDITOR VERLADIA BLOUNT'S COMPLAINT FOR NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(5) AND (a)(15) AND FOR DENIAL OF DISCHARGE PURSUANT T 11 U.S.C. § 727(a)(2), (3), (4) AND/OR (5)**

NOW COMES Creditor Verladia Blount, f/k/a Verladia Reed, by and through Counsel, and for her Complaint states as follows:

1. Debtor Gregory James Reed filed for Chapter 7 bankruptcy relief on August 28, 2014.

2. Verladia Blount is the former wife of the Debtor. The divorce case is *Verladia Reed v. Gregory Reed*, Wayne County Circuit Court case number 00-032452-DM.

3. At the time of filing, Debtor listed Ms. Blount as a creditor with a debt owing in the amount of $230,000.00. The amounts owed are due and owing under judgments entered in the aforementioned divorce proceeding. An initial $225,000.00 was awarded to Ms. Blount as her share of the equity in a property located at 2460 Burns, Detroit, Michigan. Although the physical property itself was determined to belong to Debtor under a prenuptial agreement, the Plaintiff was awarded her share of the equity – the $225,000.00. This judgment was affirmed by the Michigan Court of Appeals and upon remand. *Reed v. Reed*, 265 Mich. App. 131, 153 (Mich. App. 2005); see also **Exhibit A, Findings of Fact and Conclusion s of Law on Remand dated March 29,**

1

**2007, pgs. 6-7 and note 5.** Pursuant to those findings of fact, the award of the equity in the property was a determination based on the needs of the Plaintiff considering her age, debts, and other factors. *Id.*, **pgs. 12-15.** Also, after the remand, an additional $5,000.00 was awarded as sanctionable costs against Gregory Reed by order of the Honorable Jeanne Stempien when the final judgment was entered almost one year later. **Exhibit B, Final Judgment dated March 17, 2008.**

4. This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. § 157(b)(2)(I) & (J).
5. Venue is proper under 28 U.S.C. § 1409(a).

## COUNT I

## DETERMINATION THAT DEBTS ARE NONDISCHARGEABLE

## UNDER 11 U.S.C. § 523(a)(5) OR (a)(15).

6. Plaintiff incorporates the allegations contained in paragraphs (1) through (5) by reference.
7. Pursuant to 11 U.S.C. § 523(a)(5), a "domestic support obligation" is nondischargeable.
8. Under the Bankruptcy Code, the debt owed to Plaintiff is a domestic support obligation within the meaning of 11 U.S.C. § 101(14A) – it is a debt owed to the Plaintiff; it was determined to be in the nature of support due to the needs of the Plaintiff; it was established by a final judgment in the divorce case; and it has not been assigned to a governmental agency.
9. Furthermore, pursuant to 11 U.S.C. § 523(a)(15), a debt owed to a spouse or former spouse "and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit" is nondischargeable.
10. The debt owed to Ms. Blount by the Debtor in the amount of $230,000.00 is a nondischargeable support obligation within the meaning of 11 U.S.C. § 523(a)(5); and, in any event, in this Chapter 7 case, if not a debt within the meaning of § 523(a)(5), the debt falls within the scope of other

2

nondischargeable obligations under § 523(a)(15) as clearly being obligations incurred during the course of the divorce proceedings between the parties.

## COUNT II

## DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(2), (3), (4), AND/OR (5)

11. Plaintiff incorporates the allegations contained in paragraphs (1) through (10) by reference.

12. After filing for Chapter 7 relief, the Meeting of Creditors in this case was held on September 24, 2014. A transcript of the Meeting of Creditors is attached. **Exhibit C, 341 Transcript.**

13. Upon an investigation into the affairs of the Debtor, and the petition and schedules that have been filed in this case, the following omissions, falsehoods, and evasions have been uncovered:

    a. On his originally filed Schedule A, Debtor listed one property that he owned, i.e. – 2460 Burns Rd., Detroit, Michigan. Initially, Debtor failed to list the fact that he owns the parcel of property next door with an address of 2472 Burns, Detroit, Michigan (which has its own separate parcel identification number). Debtor also failed to list any interest in another condominium that he had owned, 1185 Hideaway Valley Rd, Unit 32, Harbor Springs, Michigan. Thus, Debtor's schedules, as initially filed, failed to disclose 2472 Burns and the condominium in Harbor Springs.

    Later, the Debtor amended his schedules to include the Harbor Springs condominium, but still did not indicate that he also owned 2472 Burns. At the § 341 meeting of creditors, the Debtor claimed that the Harbor Springs condominium was assigned to Keeper of the Word Foundation.

    In various public documents filed by the Debtor and the Keeper of the Word Foundation, the real property was supposedly transferred by way of assignment on April 4, 2004. **See Exhibit D, 2004 General Assignment.** It is worthy of note that the assignment was obviously not executed in 2004 on the date indicated. The notary on the assignment is that of Brian Heard. While Mr. Heard is a licensed notary, the public

3

records with the Michigan Secretary of State show he received his commission on October 6, 2008. Mr. Heard could not have witnessed the document on the date it was purportedly signed. Furthermore, it should be noted that if the assignment was executed *after* October 6, 2008, then the purported assignment would be within 6 years of Debtor's bankruptcy filing – and the transfer would be subject to Michigan's fraudulent conveyance laws.

But more importantly, the assignment which purports to assign the *real* property interests of the Debtor utterly fails under Michigan's Statute of Frauds. See M.C.L. § 566.106. The conveyance fails to describe the property, the terms of the conveyance, the price, or any other essential terms whatsoever. Since the assignment fails, then there was no conveyance of the Burns Property, and Debtor should have listed the property on his schedules. Debtor, being a trained attorney with an MBA in Taxation from Wayne State University, should have known this.

b. On his schedules, Debtor valued the property located at 2460 Burns as $200,000.00. At his Meeting of Creditors, Debtor stated that he valued the property based on the "the tax assessment" and that he did not look up any other comparable properties or refer to any other source to determine the value of the property. **Exhibit C, 341 Transcript, pg. 9.** If Debtor based his valuation on "the tax assessment" then the value of the property, based on a State Equalized Value of $135,752.00, would be $271,504.00. **Exhibit E, Property Tax and Valuation Documents for Burns Property.** Furthermore, that is just for the 2460 Burns property, and not the parcel at 2472 Burns. Further still, a Zillow search shows that both 2460 and 2472 Burns may have a combined value of near $390,000.00. *Id*. Debtor has made false statements in undervaluing the residence at $200,000.00.

c. With respect to the Burns properties, the Debtor listed a debt owing to "MERS" in the amount of $250,000.00. First, the $250,000.00 figure is the original loan balance on the

4

mortgage that was taken out executed on September 27, 2005.  **See Exhibit F, Mortgage for 2460-2472 Burns.**  Upon information and belief, the mortgage payments have continued to be paid and the balance due to the mortgage company is not $250,000.00.  Furthermore, it appears that MERS is no longer the "creditor" for the loan as a search for the Mortgage Identification Number (MIN - 100210600000036856) on the MERS servicer identification website shows the account to be "inactive" with respect to MERS.  **See Exhibit G, MERS Service ID printout.**

d. On his Schedule A, the Debtor listed the Harbor Springs condo as a "time share" valuing the condominium at $5,000.00.  This statement was false when made because the ownership was not that of a "time share" – the Debtor was the fee simple owner of the property.  Furthermore, any $5,000.00 valuation figure is *grossly* understated.  Harbor Springs is a resort town on the shores of Northern Lake Michigan near Petoskey, Michigan, and close to the Boyne ski resorts.  In 2012, the property was foreclosed upon by the condominium association for approximately $22,000 in unpaid condo association dues and assessments.  **See Exhibit H, Sheriff's Deed for Harbor Springs condominium.**  Although Debtor *now* claims an ownership interest in the property, he has recently filed documents on behalf of the Keeper of the Word Foundation claiming that Keeper of the Word Foundation was the owner of the property as a result of the April 4, 2004, supposed assignment of real property interests and that the condominium had been wrongly foreclosed upon.

e. During his Meeting of Creditors, Debtor claimed not to know that the Harbor Springs condominium was foreclosed.  However, upon information and belief, Debtor did in fact know that the property was foreclosed as he indicated as such during other state court proceedings.  Debtor's statements were false when made during the Meeting of Creditors.

f. On the Statement of Financial of Affairs, question number 18(a) requires the Debtor to list those businesses of which the Debtor is an "officer, director, partner, or managing executive of a corporation" within the 6 year pre-petition period. Debtor failed to disclose the following businesses of which he was an officer, director, etc.

1. Under Michigan's non-profit corporation act, "ownership," so to speak, in a non-profit corporation can be either based on stock ownership, or on a membership interest. Under either scenario, Debtor was required to list his stock ownership or membership interest in Keeper of the Word Foundation. In any event, Debtor was an officer or director of the corporation and was required to identify such interest on his Statement of Financial Affairs. In 2010 and 2013-2014, Debtor was listed as the President of the company; in 2011 and 2012, the Vice-President; in 2009, the Secretary and he was listed as one of the Directors.

2. Debtor also failed to list that he is or was the Director of Mic Arian Corporation within the 6 years prior to filing. Mic Arian Corporation is a Michigan corporation that is still listed as active and is current on its annual reports.

3. Debtor also failed to list that he was still the Vice President of Gregory J. Reed Scholarship Foundation according to the latest 2014 annual report for the company.

4. Debtor also failed to list any interest in Gregory J. Reed & Associates, P.C., which is still an active corporation according to the latest 2014 annual report for the company.

5. Debtor also failed to list any interest that Debtor had in AHR Packaging Consultant Corporation. The company is still active and files annual

reports. In 2009 the Debtor was identified as the Director of the company on the annual report that he signed.

6. Debtor failed to list that he is a board member of the Rhythm & Blues Foundation. http://www.rhythm-n-blues.org/board.php?member=greed.

7. Debtor failed to list his interest in the trademark "CruisIN' the D' " which was applied for on May 20, 2014, with the U.S. Patent and Trademark Office. **See Exhibit I, Trademark Application Search.** Furthermore, Debtor failed to disclose that he is an officer, director, member, or stock holder in the Michigan nonprofit corporation CruisIN' the D' which was established in March 2014.

**See Exhibit J, Secretary of State Filings.**

g. To the extent that Debtor failed to list his business interests, Debtor also failed to properly list the value of such interest. Keeper of the Word Foundation, in particular, is, in effect, the alter ego of the Debtor where Debtor's expenses are paid out of that business. Furthermore, the business has valuable documents in its possession and control, including documents from Malcolm X, Rosa Parks, Nelson Mandela, and Nation of Islam Founder W.D. Fard. These documents are worth hundreds of thousands of dollars, if not more.

h. Upon information and belief, Debtor has failed to list his income properly where Keeper of the Word Foundation pays for many of the Debtor's expenses – including, but not limited to, the vehicle that he drives.

i. To the extent that property of the Debtor was *not* transferred by the 2004 assignment, Debtor failed to list the property on the Debtor's schedules.

j. When asked "[d]o you now or *have you ever used* any other name or alias," Debtor replied "no." **Exhibit C, 341 Transcript, pg. 18, lines 11-12 (emphasis added).**

However, Debtor *has* used another name – James G. Deer ("Deer" is "Reed" spelled backwards, James is Debtor's middle name, and G would obviously stand for Gregory.) **See Exhibit K, Assignment of Purchaser's Interest in Land Contract.** In that Assignment Debtor signed his name over the name of James G. Deer. Debtor's statement at the Meeting of Creditors was false when made.

k. Upon information and belief, the Debtor may have valuable furniture and artwork still remaining in the Harbor Springs condominium. Such furniture was not properly disclosed, nor was it properly valued.

l. Upon information and belief, Debtor has understated the value of the furnishings in his primary home on Burns. Debtor's home is a rather large home in the Indian Village district of Detroit.

m. Debtor failed to list his watch collection on his Schedule B.

n. Debtor failed to list copyrights in some or all of the works that he has published and which he is still the owner of. **See Exhibit L, Copyright Search Listing.**

o. Debtor has failed to list tax debts that he owes to the United States of America. Tax liens were filed in 2012 in both Emmet and Wayne County, Michigan. No discharge of lien has been filed and thus it appears the liability owed to the IRS has not been satisfied. **See Exhibit M, Tax Liens.**

14. In addition to the foregoing, the Debtor at all times during the course of his divorce proceedings failed to provide documents, withheld information about his assets, prevented discovery of his assets, and has attempted to continuously conceal the identification and location of his assets. Many of these acts of concealment are described in the Wayne County Circuit Court's Findings of Facts and Conclusions of Law attached as an exhibit to this Complaint and Debtor incorporates those findings as though fully stated herein.

15. Such concealment of assets continued from the time of any transfer of assets to within the 1 year period prior to the filing of Debtor's Chapter 7. Indeed, the concealment continues apace.

16. Although Debtor claims to have transferred some of his assets by way of a general assignment executed in 2004, such assignment could not have been effective with respect to property acquired *after* 2004. In any event, as described above, the general assignment that was supposedly executed on April 4, 2004, could *not* have been executed on such date since the notary who witnessed the execution did not have his commission until October 2008. Furthermore, it appears that the transfer was made only with the intent that such transfer would occur on the death of the Debtor and there could have been no present intent to transfer any assets to Keeper of the Word Foundation. Debtor testified at the Meeting of Creditors that "It's upon my demise that those assets would be transferred and liquidated to use for humanity purposes." **Exhibit C, 341 Transcript, pg. 18.**

17. At all times, Debtor has been evasive about the nature of his assets, hid his assets, and failed to explain the loss of assets. A reading of the divorce court findings of facts shows that Debtor has claimed that the Malcolm X papers demonstrates the evasions of the Debtor. **Exhibit A, Findings of Fact and Conclusions, of Law, pg. 7 and note 7.** The Court noted that the Debtor had alleged that the papers were donated, and later alleged that the papers had been auctioned. The Debtor never was able to prove that the Malcom X papers had been transferred, and documentary evidence showed that he was still likely the owner as late as 2006. *Id.*

18. Debtor continues to use his nonprofit organization, Keeper of the Word Foundation, as a vehicle for fraud and manipulation and evasion. Debtor, claims that he transferred various assets to Keeper of the Word Foundation in 2004. Such transfers occurred *after* the Debtor had judgments or rulings against him in the divorce proceedings between the parties. Debtor routinely *claims* that Keeper of the Word Foundation owns the assets but has never shown that the property was transferred.

19. Debtor has routinely sought to hinder and delay creditors – the litigation in the divorce proceedings between the parties is proof enough. Debtor has also filed meritless actions against a court appointed receiver, Jason G. Horton, and Debtor was sanctioned in the amount of $5,000.00 for violating the divorce court's order.

20. Debtor has routinely failed to provide adequate documentation, including tax information, and other business information from which his financial affairs can be determined, including the assets and value of his business entities.

21. Pursuant to 11 U.S.C. § 727:

> (a) The court shall grant the debtor a discharge, unless—
>
> * * *
>
> > (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> >
> > > (A) property of the debtor, within one year before the date of the filing of the petition
> > >
> > > * * *
> >
> > (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
> >
> > (4) the debtor knowingly and fraudulently, in or in connection with the case—
> >
> > > (A) made a false oath or account;
> > >
> > > * * *

10

14-53838-mbm    Doc 39    Filed 11/24/14    Entered 11/24/14 15:11:20    Page 10 of 11

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

22. The foregoing facts alleged support the conclusion that Debtor debts are nondischargeable under 11 U.S.C. § 727(a)(2), (3), (4), and (5).

WHEREFORE, for the reasons set forth above, Creditor/Plaintiff respectfully requests that the Court enter a judgment against the Debtor determining that:

a. the debt owed to the Plaintiff is nondischargeable under § 523(a)(5);

b. in the alternative, that such debt is nondischargeable under § 523(a)(15);

c. That the Debtor's debts are nondischargeable under 11 U.S.C. § 727(a)(2), (3), (4) and/or (5), and

d. grant such other and further relief as this Court deems just and equitable.

Respectfully Submitted,

*/s/ Brian Rookard*
Brian A. Rookard (P-69836)
Gudeman & Associates, P.C.
Attorneys for Creditor Roderick Prisbe
1026 W. Eleven Mile Rd
Royal Oak, MI 48067
Ph: 248-546-2800
brookard@gudemanlaw.com

Dated: November 24, 2014