UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

   Gregory James Reed,                            Case No. 14-53838-MBM
                                                           Chapter 7
                          Debtor.     /         Hon. Marci B. McIvor


**<u>OPINION DENYING DEBTOR'S MOTION FOR RECONSIDERATION OF ORDER DENYING DEBTOR'S OBJECTION TO PROOF OF CLAIM NO. 2 FILED BY VERLADIA BLOUNT</u>**

This matter comes before the Court on Debtor's Motion for Reconsideration of Order Denying Debtor's Objection to Proof of Claim No. 2 filed by Verladia Blount. For the reasons set forth below, this Court DENIES Debtor's Motion for Reconsideration.

I.

FACTUAL BACKGROUND

Verladia Blount and Gregory Reed were married on July 5, 1975. Prior to their marriage, the parties executed a pre-nuptial agreement, which provided, among other things that, in the event of a divorce, Gregory Reed would be awarded the residence at 2460 Burns Avenue, Detroit, Michigan (the "Burns Property").

On October 3, 2000, Blount filed for divorce from Reed in the Wayne County Circuit Court. Shortly after the filing of the divorce, Reed claimed that, pursuant to the pre-nuptial agreement, Reed was entitled to everything he purchased during the course of the marriage.

Blount moved for summary judgment, asserting that the 1975 pre-nuptial agreement was unenforceable. On September 23, 2002, the Wayne County Circuit Court ruled that the May 5, 1975 pre-nuptial agreement was unenforceable.

On April 28, 2003, after a trial, the Wayne County Circuit Court entered an Opinion and Order which ruled that the marital estate should be divided equally, with the exception of a large piece of property located in Springfield Township, Michigan.[1] The court valued the marital assets and then divided them in a manner which provided that an equal dollar amount went to Blount and Reed. Based on the valuation of the assets, Blount was awarded the proceeds of a condemnation lawsuit, an annuity and a worker's compensation settlement from Detroit Edison, a 50% interest in various investment funds, 55% of the proceeds of the sale of the Springfield property, and a few miscellaneous assets. The proceeds of the condemnation lawsuit were to be held in the attorney Gregory Buss's client trust account until distribution. (Docket No. 476, Exhibit A, Judgment of Divorce 5/16/2003, p.6). Reed was awarded a 50% interest in various investment funds, 45% of the proceeds of the sale of the Springfield property, the Burns property, a condominium in Harbor Springs, real property located at 1201 Bagley in Detroit, Michigan, Reed's interest in his professional corporation and in his SEP, and an asset known as the Malcolm X Papers. (*See*, April 28, 2003 Opinion and Order, Docket No. 476, Exhibit A, pp. 15-16).

---

[1] The division of proceeds from the Springfield Township Property was 55% to Blount and 45% to Reed. "The unequal division of this asset is necessary to equalize the distribution between the parties." (Opinion and Order, Section II(D)).

2

Reed appealed the ruling of the trial court to the Michigan Court of Appeals. In February, 2005, the Michigan Court of Appeals, in *Reed v. Reed*, 693 N.W.2d 825, 839 (Mich. Ct. App. 2005), granted in part and reversed in part the lower court's ruling. In relevant part, the Court of Appeals ruled that proceeds from the condemnation proceeding were a marital asset (a ruling which affirmed the trial court) and reversed the lower court on the issue of the enforceability of the pre-nuptial agreement. However, the Court of Appeals limited the effect of its ruling by stating:

> . . .the parties' prenuptial agreement does not exclude their home on Burns from the marital estate. The agreement provides that "[i]n the event of divorce . . . [defendant] shall be awarded the residence ...." Thus, the trial court did not err by including the marital home in the marital assets but awarding it to defendant <u>subject to plaintiff's receipt of her share of its equity</u> (emphasis added).

*Id.* The case was remanded to the Wayne County Circuit Court for further findings consistent with the Court of Appeals opinion.

On March 28, 2005, Blount executed a Quit Claim Deed for the Burns property to Reed.

On March 29, 2007, the Wayne County Circuit Court issued "Findings of Fact and Conclusions of Law on the Remand." (Adv. Pro. No. 15-4192, Dkt, No. 1, Ex.3). The portion of the Findings of Fact and Conclusions of Law relevant to Defendant's Motion for Reconsideration are as follows:

> Plaintiff received her net proceeds from the condemnation and promptly paid creditors. Since the trial court decision, Plaintiff has paid $523,745.00 to creditors that she identified in her remand testimony. These payments reflect on Plaintiff's character as being honest and prompt about meeting her obligations. At the time she made the payments, she was anticipating future revenue from the Springfield property, but that did not happen. She did not collect the attorney fees the court awarded and she paid her attorneys immediately upon receipt, of which

3

she expected $150,000.00 to be reimbursed to her by Defendant. She currently
owes attorney fees in the ongoing litigation in the amount of $427,000.00.
[footnote excluded].

. . .

After 27 years of marriage, Plaintiff's current debt and contributions
justify invading Defendant's property as he defined it in the 1975 prenuptial
agreement. When this court considers Plaintiff's actual financial contribution to
Defendant's assets along with her present need, there is clear and convincing
evidence that Defendant's separate property must be invaded in order to achieve
equity in this case. Based on Defendant's ability to earn income and Plaintiff's
need, future spousal support is reserved.

Therefore, Plaintiff is awarded 50% of the equity in the Burns property.
The value of her share is determined based on the equity existing on April 28,
2003, the date of Judge Macdonald's opinion. This court finds Plaintiff is entitled
to one-third of Defendant's share of the Springfield property. Her contribution
was cash from the forged check[2] and her share of the Jennings referral fee.[3]

*(Id.* at pp. 14-15.)

The 2003 Judgment of Divorce valued the Burns property at $450,000.00. On April 4,

2007, Blount recorded a Claim of Interest against the Burns property in the amount of

$225,000.00.

On March 17, 2008, the Wayne County Circuit Court issued a Final Judgment in *Reed v.*

---

[2]The "forged check" refers to a check tendered by the City of Detroit in the amount of $240,000.00 to Verladia Blount, Gregory Reed and Equestrian Estates Limited Partnership as an initial offer for the fair market value for property on Garfield which was condemned by the City of Detroit. Reed forged Blount's signature and cashed the check. No money was ever paid to Equestrian Estates Limited Partnership or put into a partnership account, and none was ever given to Blount. ("Findings of Fact and Conclusions of Law on the Remand", Adv. Pro. No. 15-4192, Dkt, No. 1, Ex.3, p.10-11.)

[3] The "Jennings referral fee" refers to Verladia Blount's recovery in an employment discrimination case, which was "referred" by Reed to Blount's attorney Jennings. Jennings agreed to pay Reed 33 1/3% of her attorney's fee, the amount paid to Reed being $110,962.19. ("Findings of Fact and Conclusions of Law on the Remand", Adv. Pro. No. 15-4192, Dkt, No. 1, Ex.3, p. 9-10.)

4

*Reed*, Wayne County Circuit Court Case No. 00-032452. The Final Judgment provided, in part:

> 5. . . . Verladia Reed [Blount] is awarded 50% of the equity in the marital home, and the date of determination of that equity is the date of Judge Kathleen Macdonald's opinion, April 28, 2003. This equates to and is hereby deemed a separate monetary award in favor of Verladia Reed in the amount of $225,000. As the proceeds of the Springfield property sales are insufficient to satisfy this award, it is enforceable against and payable from, and Verladia Reed is hereby granted a lien in that amount against, any of Gregory Reed's assets.
>
> 6. Verladia Reed is awarded an additional $5,000.00 as a result of the additional sanctionable conduct of Gregory Reed . . .As there are insufficient proceeds from the Springfield property sales to satisfy this award, it is enforceable against and payable from, and Verladia Reed is hereby granted a lien in that amount against, any of Gregory Reed's assets.

(Final Judgment, attached to Blount's Proof of Claim No. 2, ¶¶ 5, 6.)

On August 28, 2014, Gregory J. Reed (hereinafter referred to as "Debtor") filed for chapter 7 bankruptcy.

On December 15, 2014, Blount filed Proof of Claim No. 2 in the amount of $230,000 for "[s]upport and sanctions per court order."

On February 2, 2016, Debtor filed an Objection to Proof of Claim No. 2 filed by Blount. In his Objection to Claim, Debtor argued that the Quit Claim Deed executed by Blount on March 28, 2005 proved that her claim had been paid in full. Debtor further argued that Claim No. 2 had been overpaid. Debtor provided no documents to support his argument that Blount's Claim had been paid.

On March 15, 2016, this Court entered an Order Denying Debtor's Objection to Proof of Claim No. 2 (Docket No. 481). The order stated that Blount's claim was allowed in the amount of $230,000.

5

On March 29, 2016, Debtor filed a Motion for Reconsideration of Order Denying Debtor's Objection to Claim No. 2.

On March 30, 2015, this Court entered an Order Requiring Creditor, Verladia Blount, to File a Response to Debtor's Motion for Reconsideration.

On April 8, 2016, Blount filed her Response.

On April 18, 2016, Debtor filed a Reply to Blount's Response.

II.

ANALYSIS

Under E.D. Mich. LBR 9024-1, a motion for reconsideration should be granted if the movant demonstrates that the Court and the parties have been misled by a palpable defect *and* that a different disposition of the case must result from a correction of such palpable defect. A motion that merely presents the same issues already ruled upon by the Court, either expressly or by reasonable implication, shall not be granted.

In the present case, Blount filed her proof of claim No. 2 on December 15, 2014. Debtor objected to the claim, asserting that the claim had been satisfied. At a hearing held on March 15, 2016, this Court ruled that: (1) the doctrine of *res judicata* precluded Debtor from attacking the Final Judgment entered on March 17, 2008; (2) the Rooker-Feldman doctrine barred relitigation of Debtor's liability to Blount; and (3) Debtor failed to provide any proof that he had satisfied his obligation to Blount. The Court then entered an Order Denying Debtor's Objection to Proof of Claim No. 2 and allowing Blount's claim in the amount of $230,000.

In his Motion for Reconsideration, Debtor argues that the 2003 Judgment of Divorce awarded Blount $687,117.00 which, according to Debtor, <u>included</u> Blount's share of the equity in the Burns property. Debtor's Motion for Reconsideration included exhibits supporting Debtor's argument that Blount had been paid the $687,117. Debtor concluded in his Motion that, because Blount had been paid in full, the Final Judgment entered by the state court is void and not subject to the doctrine of *res judicata*. Debtor argues that, because the doctrine of *res judicata* does not apply, this Court may reconsider the issue of whether Blount's claim has been paid in full.

This Court is unpersuaded by Debtor's arguments. Debtor's argument that this Court may ignore a state court judgment, based on a forty-seven page opinion containing Findings of Fact and Conclusions of Law, is incorrect. The Final Judgment was issued by the State Court on March 17, 2008. If there were errors in that judgment, Debtor's remedy was an appeal in the State Court. Coming into bankruptcy court seven years after a final judgment between the same parties was issued by a state court is <u>precisely</u> the collateral attack barred by the doctrine of *res judicata*. There is no palpable defect in this Court's ruling. The doctrine of *res judicata* and the Rooker-Feldman doctrine preclude this Court from redetermining the amount of money still owed to Blount.

Although the doctrine of *res judicata* clearly bars relitigation of the amount owed by Debtor to Blount, this Court has independently verified that Debtor had not fully satisfied his obligation to Blount. After a careful review of (a) the Opinion and Order issued by Judge Kathleen MacDonald on April 28, 2003, (b) the Judgment of Divorce issued by Judge Kathleen

7

MacDonald on May 16, 2003, (c) the Court of Appeals decision in *Reed v. Reed*, 693 N.W.2d 825 (Mich. Ct. App. 2005), (d) the Findings of Fact and Conclusions of Law on Remand issued by Judge Jeanne Stempien on March 29, 2007, and (e) the Final Judgment issued by Judge Jeanne Stempien on March 17, 2008, the Court is fully satisfied that Debtor still owes Blount the $230,000.00 awarded to her in the Final Judgment entered on March 17, 2008.

The Court first notes that Debtor has been contesting the amount owed to Blount since 2003, so it should be no surprise that he has carried his fight into bankruptcy court.[4] That being said, the explanation as to why the Final Judgment entered in 2008 found that Debtor owed Blount $230,000 is relatively straightforward. In 2003, the state court divided the marital assets equally between Blount and Reed with the exception of an asset referred to as the Springfield property. The court assigned a monetary value to all the property owned by the parties and awarded each party sufficient property so that the monetary value of that property was approximately equal. (*See* Opinion and Order, April 28, 2003, pp. 15-16.)

One of the assets awarded to Blount was an asset labeled "condemnation proceeds" in the amount of $687,117.00. Those proceeds were held in the client trust account of Gregory Buss. Blount was awarded several other assets, including a 55% interest in the Springfield property. Reed was awarded the marital home on Burns, other assets, and a 45% interest in the Springfield property.

---

[4]Over the 14 years that Debtor has been challenging the amount he owes Blount, Blount has been awarded at least $150,000.00 against Debtor for fees and costs she incurred in the divorce action.

At some point in time, the condemnation proceeds were, in fact, paid to Blount. The Findings of Fact and Conclusions of Law issued by Judge Stempien on March 29, 2007 states: "Plaintiff [Blount] received her net proceeds from the condemnation and promptly paid creditors." (Findings of Fact, p. 13.) Thus, Reed is correct that Blount received that portion of the money awarded to her pursuant to the Judgment of Divorce.

Reed's argument ignore the fact that Blount was awarded additional assets in the 2003 Judgment of Divorce, specifically a 55% share in the Springfield property. One of the findings of fact in the 2007 "Findings of Fact and Conclusions of Law" was that Blount never received any distribution of money from the Springfield property. (Findings of Fact, March 29, 2007, p. 13.) Because Blount never received the amount she was owed pursuant to the 2003 Judgment of Divorce, the trial court in 2007 was required to recalculate the appropriate division of marital assets. The state court found as follows:

> After 27 years of marriage, Plaintiff's current debt and contributions justify invading Defendant's separate property as he defined it in the 1975 prenuptial agreement. When this court considers Plaintiff's actual financial contribution to Defendant's assets along with her present need, there is clear and convincing evidence that Defendant's separate property must be invaded in order to achieve equity in this case. Based on Defendant's ability to earn income and Plaintiff's need, future spousal support is reserved.

(Findings of Fact, March 29, 2007, p. 14.)

Therefore, Plaintiff is awarded 50% of the equity in the Burns property. The Final Judgment entered on March 17, 2008 valued Blount's share of the equity in the Burns property at $230,000.00. That sum of money has never been paid.

The bottom line is that Blount received some, but not all, of the money she was awarded

9

pursuant to the Judgment of Divorce. Even if this Court was not barred from reconsidering Reed's obligation to Blount by the doctrine of *res judicata* and the Rooker-Feldman doctrine, this Court is satisfied that Reed still owes $230,000.00 to Blount. Therefore, there is no palpable defect in this Court's ruling denying Reed's objection to Claim No. 2 filed by Blount.

III.

CONCLUSION

For the reasons set forth above, debtor Gregory Reed's Motion for Reconsideration of this Court's Order Allowing Blount's claim in the amount of $230,000.00 is DENIED.

Signed on April 21, 2016

/s/ Marci B. McIvor
Marci B. McIvor
United States Bankruptcy Judge

10